**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**MICHAEL LEE STROPE and
ALAN W. KINGSLEY,**

      **Plaintiffs,**

      **v.**                           **Case No.  06-3150-JWL**

**JIM COLLINS, et al.,**

      **Defendants.**

_____

**MEMORANDUM AND ORDER**

      In this lawsuit, plaintiffs Michael Lee Strope and Alan W. Kingsley, inmates who are proceeding pro se, bring a claim pursuant to 42 U.S.C. § 1983 against various prison officials at Lansing Correctional Facility.  Plaintiffs allege numerous constitutional violations under the First, Eighth, and Fourteenth Amendments arising from the defendants' censorship and seizure of magazines based on what the defendants claim to be nudity contained therein.  The defendants include Jim Collins, the mail review officer at Lansing Correctional Facility; David R. McKune, the warden; and William Cummings, a designee of the Kansas Secretary of Corrections.  This matter is before the court on defendants' Motion to Dismiss (doc. #23).  Therein, defendants ask the court to dismiss plaintiffs' case on three grounds: (1) plaintiffs

have failed to exhaust their administrative remedies; (2) defendants are entitled to qualified immunity; and (3) plaintiff Strope's claims for equitable relief are moot.[1]

As a threshold matter, the court finds that plaintiffs have properly exhausted their administrative remedies. The aspect of defendants' motion based on qualified immunity is granted in part and denied in part. Specifically, it is denied insofar as plaintiffs are claiming a violation of their First Amendment right to receive information while in prison and also insofar as plaintiffs are alleging a deprivation of procedural due process with respect to the withholding of publications other than the March 2006 issue of *Stuff* magazine. It is otherwise granted with respect to plaintiffs' procedural due process claim concerning the March 2006 issue of *Stuff* magazine as well as with respect to plaintiffs' Eighth Amendment deliberate indifference claim; defendants are entitled to qualified immunity on these claims. The motion is denied with respect to plaintiff Strope's claims against defendants in their official capacities because the court cannot find based on the current record that plaintiff Strope's claim for equitable relief is necessarily moot.

---

[1] The court notes that the defense of qualified immunity can only shield defendants from liability for damages arising from claims brought against them in their individual capacities. *Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006). Plaintiffs' complaint seeks not only damages but also a declaratory judgment and injunctive relief. Mindful of plaintiffs' pro se status and the court's obligation to construe their complaint liberally, the court will construe their complaint as asserting claims against defendants in both their individual and official capacities in light of their requests for both monetary and equitable relief. *See Hull v. New Mexico Taxation and Revenue Dep't*, 179 Fed. Appx. 445, 447 (10th Cir. 2006) (court construed pro se plaintiff's complaint liberally to include both official and individual capacity claims).

## I. __Exhaustion of Administrative Remedies Under the PLRA__

The Prison Litigation Reform Act (PLRA) contains a mandatory exhaustion requirement for inmates challenging prison conditions in federal court which provides as follows: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Kikumura v. Osagie*, 461 F.3d 1269, 1281 (10th Cir. 2006). "This exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Kikumura*, 461 F.3d at 1281 (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). The fact of exhaustion must be specifically pled by the plaintiff. *Norton v. City of Marietta*, 432 F.3d 1145, 1150 (10th Cir. 2005); *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1210 (10th Cir. 2003). "The plaintiff must attach a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome." *Norton*, 432 F.3d at 1150 (quotation omitted); *accord Steele*, 355 F.3d at 1210.

The grievance procedure for Kansas state prisoners, such as the plaintiffs here, is described in Kansas Administrative Regulations §§ 44-15-101 to -106. *Smith v. Rudicel*, 123 Fed. Appx. 906, 907 (10th Cir. 2005). In summary fashion, these regulations generally envision an essentially three-step grievance procedure. First, the inmate must present the grievance to the unit team; second, if the inmate does not obtain a satisfactory solution, he

may then submit the grievance to the warden; and, third, if the inmate still does not receive a satisfactory response from the warden, the inmate may appeal to the Kansas Secretary of Corrections.  K.A.R. § 44-15-102.  The inmate may file a § 1983 claim only after he or she exhausts this administrative process.  *Smith*, 123 Fed. Appx. at 907.

In this case, defendants do not dispute (and, indeed, the record reflects) that plaintiffs exhausted this administrative process with respect to their claims set forth in Counts 1-6 and with respect to plaintiff Strope's claims in Counts 7-9.  With respect to plaintiff Kingsley's claims in Counts 7-9 and both plaintiffs' claims in Counts 10-11, however, defendants correctly point out that plaintiffs bypassed the first and second steps of this grievance process, i.e., the unit team and the warden, by submitting the grievances underlying those claims directly to the Secretary of Corrections.  Thus, defendants contend that plaintiffs have failed to properly exhaust their administrative remedies.  Plaintiffs acknowledge that they skipped the first two steps, but point out that the Secretary nonetheless accepted and responded to each of those grievances.  Specifically, in response to plaintiff Kingsley's grievance dated March 26, 2006 (which corresponds to Counts 7-9), the Secretary's response dated March 29, 2006, states as follows: "Kingsley addresses his grievance to the Secretary of Corrections because he believes that the warden cannot address his concerns.  We accept the grievance for response at this time."  And, in response to plaintiffs' April 24, 2006, grievances which correspond to Counts 10-11, the Secretary of Corrections' responses contain virtually identical language.  Thus, plaintiffs contend that they exhausted their administrative remedies on those claims because the Secretary accepted and responded to

4

these grievances instead of remanding them back to the lower facility for processing.  The court agrees, for two reasons.

First, the three-step administrative process set forth in the Kansas Administrative Regulations is the one which is generally applicable to prisoner grievances.  There is a separate provision, however, for special kinds of problems whereby the "inmate wants to bring a problem to the attention of a higher authority without going through the grievance procedure." K.A.R. § 44-15-201(a).  Under those circumstances, the inmate may submit the grievance directly to the warden, the secretary of corrections, or the state pardon attorney. *Id.*  The regulation then explains that such grievances "should be reserved for the most difficult and complex problems," which generally would not include "any matter that can be internally handled under the inmate grievance procedure." *Id.*  Most significantly, however, the regulation gives the recipient of the grievance the authority to determine whether the grievance is of such a nature that using this bypass procedure is appropriate.  It states as follows:

> Any department of corrections or facility official who receives a complaint letter may return it to the inmate with instructions to the inmate to make use of and follow the proper grievance procedure if, in the opinion of the official, the matter is appropriate for handling through the grievance procedure.

*Id.* § 44-15-201(b).  In this case, the Secretary of Corrections did not return the subject grievances to plaintiffs with instructions to follow the ordinary grievance procedure.  Because the Secretary of Corrections accepted and responded to the grievances, then, plaintiffs properly exhausted their administrative remedies on these claims.

5

Second, even in the absence of this regulation, the court believes plaintiffs exhausted their administrative remedies because the Secretary of Corrections, who is the final arbiter in the grievance process, accepted and responded to their grievances.  The Tenth Circuit case involving facts most like those at issue here is *Ross v. County of Bernalillo*, 365 F.3d 1181 (10th Cir. 2004).  In *Ross*, the Tenth Circuit adopted the procedural default rule in the context of PLRA exhaustion by stating that a prisoner needs not only to exhaust his or her administrative remedies, but also needs to exhaust those remedies *properly*.  *Id.* at 1185-86. The court in *Ross* discussed this concept with respect to the rules governing time limits, and held that regardless of whether a prisoner goes through the formality of submitting a time-barred grievance, the prisoner may not argue that he or she exhausted administrative remedies by, in essence, failing to timely submit the grievance.  *Id.* at 1186.  The court then noted that it did not need to address whether the prisoner's grievance in that case was timely submitted because the prison actually considered it.  *Id.*  The court stated that "[i]f a prison accepts a belated filing, and considers it on the merits, that step makes the filing proper . . . and avoids exhaustion, default, and timeliness hurdles."  *Id.*

This reasoning applies with equal force to an inmate who skips steps in the administrative process as long as the final arbiter[2] nonetheless accepts the grievance and considers it on the merits.  The PLRA exhaustion requirement "'attempts to eliminate

---

[2] The situation would be different if plaintiffs had begun, but not completed, the grievance process.  *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2003) (noting such an inmate failed to exhaust his administrative remedies).

unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Kikumura*, 461 F.3d at 1283 (quoting *Woodford v. Ngo*, 126 S. Ct. 2378, 2387 (2006) (further quotation omitted)).  Here, the Secretary of Corrections had the time and opportunity to address plaintiffs' grievances before plaintiffs brought this lawsuit.  At that time, the Secretary chose to allow plaintiffs to bypass steps in the Department of Corrections' own procedure when the Secretary accepted and considered the merits of plaintiffs' grievances rather than sending them back and directing plaintiffs to resort to the ordinary procedure.  This resolution made plaintiffs' grievances proper so as to avoid any exhaustion hurdles that might otherwise exist.  Accordingly, defendants' motion to dismiss is denied insofar as they contend that plaintiffs failed to exhaust their administrative remedies.

## II. <u>Motion to Dismiss</u>

**A.     Background**

The following facts are taken from the allegations in plaintiffs' complaint and, consistent with the well established standard for evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court assumes the truth of these facts for purposes of analyzing the motion to dismiss.  Plaintiffs Strope and Kingsley were at all relevant times inmates

confined at Lansing Correctional Facility.[3]  Defendant Jim Collins is a mail review officer at the facility, defendant David R. McKune is the warden, and defendant William Cummings is a designee of the Secretary of Corrections.  Plaintiffs' claims arise from the defendants' allegedly unconstitutional censorship of publications based on their contents.

Counts 1 and 4 of plaintiffs' complaint allege that defendants Collins and Cummings violated plaintiffs' First Amendment rights by censoring their March 2006 issues of *Stuff* magazine.  These counts refer to Exhibits 1 and 2 of plaintiffs' complaint, which are the appeals and grievances relating to the facility's withholding of this particular issue of *Stuff* magazine.  These exhibits reflect that both plaintiffs received a KDOC Notification of Publication Seizure/Censorship form dated February 8, 2006, in which they were notified that their March 2006 issues of *Stuff* magazine were being withheld from delivery because they contained sexually explicit material as described in K.A.R. § 44-12-313 and met the criteria for censorship of mail as described in K.A.R. § 44-12-601 because they contained "numerous photos of women's bare buttocks."  Both plaintiffs appealed those decisions by the facility mail review officer, defendant Collins.  In dispositions dated February 20, 2006, the Secretary of Corrections affirmed defendant Collins' decisions, explaining that the publications included sexually explicit photographs according to the definition set out in K.A.R. § 44-12-313 in that they contained photographs of bare female buttocks.

---

[3] Since the filing of the complaint Mr. Strope has been transferred to Hutchinson Correctional Facility.

In Count 2, plaintiffs allege that defendant Collins violated plaintiffs' Fourteenth Amendment rights by a "deprivation of due process by unlawful censorships of pre-approved magazine subscription select issues when they come in." (Compl. ¶ 8, at 3.)   Again, plaintiffs' reference to Exhibits 1 and 3 seem to indicate that this claim relates to the withholding of the March 2006 issue of *Stuff* magazine.

Count 3 alleges that defendant McKune violated plaintiffs' First Amendment rights by censoring the magazines quoted in the grievances attached as Exhibits 4 and 5, in that his "interpretation/application" of the statute defining nudity is vague and results in individual application by each prison official, that K.A.R. § 44-12-313 is being applied to these magazines that do not meet the criteria for that type of censorship, and the prison officials "also fail to meet their burden because they don't provide alternative methods/means of expressing that right." (*Id.* at 3a.)  The magazines listed in Exhibits 4 and 5 include "*King*, *FHM*, *Vibe*, *Stuff*, *G.Q.*, etc."  (*Id.* at Exs. 4B and 5B.)

Count 5 alleges that defendant Cummings violated plaintiffs' First Amendment rights and also their "Fourteenth Amendment rights to due process by a pre-determined answer on appeal to censored items based on content" (*id.* at 3a), thereby failing to meet his burden of showing a reasonable penalogical interest in seizure of "*King*, *FHM*, *Vibe*, *Stuff*, *G.Q.*, etc."

In Count 6, plaintiffs allege that defendant McKune violated their Fourteenth Amendment rights by a "deprivation of due process by unlawful censorships of pre-approved magazine subscriptions." (*Id.* at 3b.)

9

Counts 7, 8, and 9 allege that all three defendants have violated the First and Fourteenth Amendments by denying them access to periodicals by "an unreasonable interpretation/application of K.A.R. 44-12-313, and 44-12-601." (*Id.* at 3b.)

Counts 10 and 11 allege that defendants McKune and Cummings have violated their Eighth Amendment right by their "deliberate indifference to the safe-keeping/well-being of prisoners whom are similarly situated." (*Id.* at 3c.)  They claim that K.A.R. § 44-12-313 pertains to sexually explicit materials and that the Kansas Department of Corrections

> is not only contradicting [itself] by enforcing this rule, but is also violating this rule, intentionally, vindictively, and maliciously, by subjecting normal prisoners to be viewed in the nude by sexually hostile/violent predators, who are often un-supervised or in areas of un-supervision, therefore, prison officials cannot interpret how a sexual predator will respond or act when he views another in the nude.   But yet, the K.D.O.C. claims [it] can, by publications/materials. It is also . . . pointed out that child molesters have free reign over/of the publication world of their choice that does [definitely] not aid in their rehabilitation, yet adds fuel to their sick and twisted minds, for example, child molesters can order books like *Teen Vogue*, *Cookie*, Toys R Us catalogs/publications, *YM*, *Child*, *US Kids*, [*Wondertime*], *Cosmo Girl*, etc., the K.D.O.C. freely allows access to these publications yet not knowing how the mind of a child molester/predator really works or gets turned on, yet they conclude that magazines like *Stuff*, *FHM*, *Maxim*, *Vibe*, *King*, etc., is harmful to normal persons/rehabilitation, yet the sick minded individuals do not even look at these type of magazines, therefore, explaining their exaggerated response to prison concerns/needs.

(*Id.* at 3c.)

## B.    Legal Standard for a Motion to Dismiss

A motion to dismiss for failure to state a claim upon which relief can be granted is appropriate only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of [its] claims which would entitle [it] to relief," *Beedle v. Wilson*, 422 F.3d 1059,

1063 (10th Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Beedle*, 422 F.3d at 1063. The issue in resolving such a motion is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quotation omitted); *accord Beedle*, 422 F.3d at 1063.

When, as here, a plaintiff is proceeding pro se, the court construes his or her pleadings liberally and holds the pleadings to a less stringent standard than formal pleadings drafted by lawyers. *McBride v. Deer*, 240 F.3d 1287, 1290 (10th Cir. 2001); *accord Shaffer v. Saffle*, 148 F.3d 1180, 1181 (10th Cir. 1998) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). In other words, "[n]ot every fact must be described in specific detail, . . . and the plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him should be allowed to amend his complaint." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (quotation omitted). The liberal construction of the plaintiff's complaint, however, "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.* (same). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Id.* (same).

**C.      Analysis**

11

Defendants ask the court to dismiss plaintiffs' claims on two grounds: first, that defendants are entitled to qualified immunity and, second, that plaintiff Strope's claims for equitable relief are moot by virtue of his transfer from Lansing Correctional Facility to Hutchinson Correctional Facility. For the reasons explained below, the court finds that as to plaintiffs' claims for damages against the defendants in their individual capacities, defendants are entitled to qualified immunity except insofar as plaintiffs are claiming a violation of their First Amendment right to receive information while in prison and insofar as plaintiffs are alleging a deprivation of procedural due process with respect to the withholding of publications other than the March 2006 issue of *Stuff* magazine. As to plaintiffs' claims for equitable relief against the defendants in their official capacities, defendants' motion is denied.

*1.    Qualified Immunity on Plaintiffs' Individual Capacity Claims*

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1984). The court's threshold inquiry in a qualified immunity analysis on a motion to dismiss for failure to state a claim upon which relief can be granted is whether the facts, as alleged by plaintiffs, set forth a constitutional violation. *Denver Justice & Peace Comm., Inc. v. City of Golden*, 405 F.3d 923, 928 (10th Cir. 2005). If so, then the court "must determine whether the right allegedly violated has been 'clearly established in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201

12

(2001)).  Plaintiffs have the burden of articulating such clearly established law.  *Walker v. City of Orem*, 451 F.3d 1139, 1151 (10th Cir. 2006); *see also Lybrook v. Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1337 (10th Cir. 2000) (plaintiff has the burden to establish that the defendant violated clearly established law).   Unless and until the plaintiff demonstrates both a clearly established right and comes forward with the necessary factual allegations, the government official is spared the burden and expense of further proceedings.  *Sawyer v. County of Creek*, 908 F.2d 663, 666 (10th Cir. 1990).

Here, defendants' argument in support of their motion to dismiss is that they "censored the magazine in question [presumably, the March 2006 issue of *Stuff* magazine] due to 'numerous photos of women's bare buttocks'" and that they followed the required procedure when they inspected and censored the plaintiffs' magazines.   Defendants' argument, however, is misplaced at this procedural juncture.  As stated previously, on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court must of course accept the allegations in plaintiffs' complaint as true and view all reasonable inferences from those facts in plaintiffs' favor.  The court cannot simply accept defendants' assertion that the March 2006 issue of *Stuff* magazine contained prohibited content; instead, the court must infer from the allegations in plaintiffs' complaint that it did not contain prohibited content.  Also, because plaintiffs are complaining about defendants' withholding of other publications, the court must infer that defendants have withheld and are continuing to withhold other publications from plaintiffs which do not contain prohibited content.  The court also cannot simply accept defendants' assertion that they followed the

required procedure in withholding all of those publications except to the extent that the procedure they followed is reflected in plaintiffs' complaint and the exhibits thereto. In sum, the arguments raised by defendants would be much more appropriately raised at another procedural juncture when the court is at liberty to delve into the actual facts of the case and resolve those questions.

Accepting the allegations in plaintiffs' complaint as true, then, the court has endeavored to determine whether those allegations set forth a constitutional violation under clearly established law. In support of their claims, plaintiffs cite case law such as *Turner v. Safley*, 482 U.S. 78 (1987); *Thornburgh v. Abbott*, 490 U.S. 401, 416 (1989); and *Maura v. Arpaio*, 147 F.3d 1137 (9th Cir. 1998), *rev'd on reh'g*, 188 F.3d 1054 (9th Cir. 1999). After reviewing this and related lines of case law as well as carefully considering the overall thrust of plaintiffs' claims, the court believes that, collectively, the allegations in plaintiffs' complaint potentially set forth essentially three different types of constitutional violations: (1) violation of the First Amendment right to receive information while in prison; (2) procedural due process deprivation of liberty claim; and (3) Eighth Amendment deliberate indifference claim.

a.   First Amendment Right to Receive Information

It is well settled that inmates have a First Amendment right to receive information while in prison to the extent that right is not inconsistent with prisoner status or the legitimate penological objectives of the prison. *Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir. 2004) (citing *Pell v. Procunier*, 417 U.S. 817 (1974)). The Supreme Court has held that

"'when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *Searles v. Dechant*, 393 F.3d 1126, 1131 (10th Cir. 2004) (quoting *Turner*, 482 U.S. at 89). This reasonableness standard requires the court to "balance the guarantees of the Constitution with the legitimate concerns of prison administrators," *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002), by asking the following:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Searles*, 393 F.3d at 1131 (quotation omitted); *accord Jacklovich*, 392 F.3d at 426. This analysis requires the court, "on a case-by-case basis, to look closely at the facts of a particular case and the specific regulations and interests of the prison system in determining whether prisoners' constitutional rights may be curtailed." *Beerheide*, 286 F.3d at 1186.

In this case, the court cannot conduct this analysis based on a non-existent factual record. Neither party has discussed the four factors the court must evaluate in determining whether the censorship was and is reasonably related to legitimate penological interests. Absent an appropriate factual record, then, the court must focus on the allegations in plaintiffs' complaint. Plaintiff Strope's initial grievance, which is attached as an Exhibit to his complaint, states that "*Stuff* does not produce nudity." (Compl. (doc. #1), at Ex. 1A.) Plaintiff Kingsley's initial grievance states that "there is no nudity or pornographic

15

materials/photos which are defined in K.A.R. 44-12-313." (*Id.* at Ex. 1F.)  Thus, the court must infer for the purpose of deciding this motion that this publication is of such a nature that it does not produce the type of nude photos which would fall within the ambit of K.A.R. § 44-12-313.   Plaintiffs' complaint and attached grievances contain similar, albeit not as specific, allegations concerning defendants' withholding of publications such as *King*, *FHM*, *Vibe*, *Stuff*, and *GQ*.   Drawing all reasonable inferences from these allegations in plaintiffs' favor, the court must infer that defendants have withheld and are continuing to withhold these publications when doing so is not reasonably related to legitimate penological interests.  *See generally Ramirez v. Pugh*, 379 F.3d 122 (3d Cir. 2004) (reversing district court ruling granting motion to dismiss challenge to federal law prohibiting the use of federal funds to distribute or make available material that is sexually explicit or features nudity; finding district court did not have an adequate factual basis for its findings and remanding "with instructions to conduct an appropriate proceeding before reevaluating the amendment and regulation under *Turner*").  Accordingly, plaintiffs' complaint sets forth a violation of their First Amendment rights.

Having found that the allegations in plaintiffs' complaint set forth a constitutional violation, the court turns to the second step in the qualified immunity analysis: whether the right allegedly violated is clearly established such that a reasonable official would have understood that withholding the publications violates plaintiffs' constitutional rights.  Once again, the court emphasizes that it is deciding this issue on a motion to dismiss and the actual content of the publications is not a part of the record.  Thus, the court must infer that the

subject publications do not contain prohibited content and, furthermore, the court must infer that the content is of such a nature that it does not even arguably fall under the prison regulation; therefore, withholding the publications is not reasonably related to legitimate penological interests.  The law is clearly established that inmates have a right to receive mail and that the right may be limited by prison regulations that are reasonably related to legitimate penological interests.  *Turner*, 482 U.S. at 89.  Because the record does not reflect that the withholding of the publications was or is reasonably related to legitimate penological interests, it should have been clear to a reasonable official that withholding the publications would violate plaintiffs' constitutional rights.  Accordingly, defendants have not shown that they are entitled to qualified immunity at this procedural juncture.

In so holding, the court recognizes that the withholding of materials under similar prison regulations banning sexually explicit and nude materials has generally been upheld as constitutional.  *See generally Mauro v. Arpaio*, 188 F.3d 1054 (9th Cir. 1999) (prison rule excluding all material containing frontal nudity was reasonably related to legitimate penological interests)[4]; *Amatel v. Reno*, 156 F.3d 192 (D.C. Cir. 1998) (statute prohibiting the Federal Bureau of Prisons from using federal funds to distribute or make available to prisoners material known to be sexually explicit or featuring nudity); *Owen v. Wille*, 117 F.3d

---

[4] Plaintiffs cite *Mauro v. Arpaio*, 147 F.3d 1137 (9th Cir. 1998), in which the Ninth Circuit held that a prison regulation prohibiting possession of sexually explicit materials violated an inmate's First Amendment rights.  Significantly, however, the Ninth Circuit withdrew that opinion and granted rehearing en banc, *Mauro v. Arpaio*, 162 F.3d 547 (9th Cir. 1998), and reversed the opinion on rehearing, finding the prison regulation constitutional, *see generally Mauro*, 188 F.3d at 1054.

1235 (11th Cir. 1997) (same, where inmate was not allowed to receive nude photographs).

Thus, defendants ultimately may be able to show that they are entitled to qualified immunity

on this claim.  But, again, at this procedural juncture the court may not examine whether

defendants' conduct in fact or even arguably complied with the applicable prison regulation.

The court must assume, as plaintiffs allege, that defendants have unreasonably applied the

regulation to content which clearly is not prohibited.  As such, the court cannot find they are

entitled to qualified immunity at this procedural juncture.  Defendants may of course renew

their claim of qualified immunity at a different procedural juncture involving a more

complete factual record where the court can examine the circumstances surrounding their

decisions to withhold the subject publications from plaintiffs.

> b.     Procedural Due Process Deprivation of Liberty

In Counts 2 and 6, plaintiffs claim that defendants Collins and McKune violated their

Fourteenth Amendment right to due process by unlawful censorship of pre-approved

magazine subscriptions.  In *Procunier*, the Supreme Court recognized that inmates have a

qualified liberty interest in uncensored communications that are protected by the First

Amendment.  416 U.S. at 418; *Jacklovich*, 392 F.3d at 433.  Thus, inmates have a right to

procedural due process when publications are rejected.  *Jacklovich*, 392 F.3d at 433.

Here, the exhibits to plaintiffs' complaint reflect that plaintiffs were given notice that

the facility was withholding delivery of their March 2006 issue of *Stuff* magazine.  They were

also given an opportunity to object to the basis for withholding the publication, and they were

given an opportunity to appeal that decision.  In short, plaintiffs were given procedural

safeguards. Thus, plaintiffs' complaint does not set forth a due process violation with respect to this particular publication. Accordingly, defendants' are entitled to qualified immunity on this portion of plaintiffs' due process claim.

As to all of the other publications, however, the procedures made available to plaintiffs are not clear from the record. Plaintiffs' complaint does not refer to any notices from the facility that they may have received concerning the withholding of those publications. Because the court must draw all reasonable inferences in plaintiffs' favor, the court must infer that plaintiffs did not receive notice that the facility was censoring those publications. Thus, plaintiffs' complaint states a procedural due process violation with respect to those publications. Additionally, the law on this matter is clearly established, *see Procunier*, 416 U.S. at 396, and therefore a reasonable official should have known that the failure to provide plaintiff with minimal procedural safeguards surrounding the denial of access to those publications would violate plaintiffs' constitutional rights. Accordingly, defendants are not entitled to qualified immunity on this portion of plaintiffs' due process claim.

c.    Eighth Amendment Deliberate Indifference Claim

In Counts 10 and 11 plaintiffs allege a violation of their Eighth Amendment rights on the grounds that the defendants' conduct constituted deliberate indifference to the safe-keeping/well-being of prisoners because plaintiffs are being subjected to being viewed in the nude by "sexually hostile/violent predators, who are often un-supervised or in areas of un-

supervision."[5]  To succeed on an Eighth Amendment claim, a plaintiff must allege facts demonstrating that the deprivation is sufficiently serious and that prison officials acted with deliberate indifference to inmate health or safety.  *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006).  Here, plaintiffs have not alleged facts from which it can be reasonably inferred that plaintiffs have at any time faced a substantial risk of harm by virtue of being subjected to being viewed in the nude by other inmates or that defendants are or were sufficiently aware of any such danger such that their disregard of that risk could constitute deliberate indifference.  Thus, plaintiffs' complaint does not set forth an Eighth Amendment violation.  Even if the complaint could be construed to set forth such a violation, plaintiffs have by no means articulated any clearly established law that would alert a reasonable official to the fact that allowing same-sex inmates to view others in the nude amounts to a constitutional violation so as to overcome defendants' claim of qualified immunity.  Accordingly, defendants are entitled to qualified immunity on plaintiffs' Eighth Amendment claim.

---

[5] Insofar as plaintiffs are claiming that these circumstances are inconsistent with the subject regulations prohibiting material containing sexually explicit and nude images, plaintiffs' allegations are more appropriately characterized as part of their overriding, larger claim concerning censorship of the publications.  Because that claim is a viable, separate claim, plaintiffs need not reiterate those allegations in yet another claim.  The court is only dismissing Counts 10 and 11 insofar as they appear to raise yet another legal theory.  Plaintiffs may still advance the arguments raised in Counts 10 and 11 in support of and within the legal framework of their First Amendment claim.  The court is simply ruling that their Eighth Amendment claim does not state a separate, viable claim.

2.      *Mootness of Plaintiff Strope's Official Capacity Claims*

Lastly, defendants contend that plaintiff Strope's claims are moot because he has been transferred from the Lansing Correctional Facility.  Ordinarily, defendants are correct that this would render his claims for declaratory and injunctive relief moot.  *Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997) (prisoner's claims for declaratory and injunctive relief were moot where he was no longer a prisoner within the control of the state prison system). In this case, however, plaintiff Strope was transferred to the Hutchinson Correctional Facility, which is another facility within the Department of Corrections of the State of Kansas.  Consequently, the facility in which he is currently housed is also subject to the challenged regulation and the authority of the Secretary of Corrections.  Thus, based on the current state of the record, plaintiff Strope's claims are not moot solely by virtue of his transfer.  *See Lehn v. Holmes*, 364 F.3d 862, 871-72 (7th Cir. 2004) (acknowledging that such a claim is generally rendered moot by transfer, but reversing the district court's dismissal for failure to state a claim where the prisoner who was seeking relief from a condition that stemmed from a system-wide policy was transferred to a different facility within the same system where the objectionable policy also applies).  Accordingly, this aspect of defendants' motion is denied.  Defendants may, of course, re-assert this argument at another procedural juncture where the court may examine the factual basis for plaintiffs' claims because such an examination may reveal that plaintiff Strope's claims are, in fact, moot.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion to

Dismiss (doc. #23) is granted in part and denied in part as set forth above.


**IT IS SO ORDERED** this 22nd  day of November, 2006.


s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

22