Trevin Erik Wray #21165
Assistant Attorney General
120 SW 10th St., 2nd Floor
Topeka, KS 66612-1597
(785) 368-8424
Attorney for the Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MICHAEL LEE STROPE,** ) | |
| **ALAN W. KINGSLEY,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CIVIL ACTION |
| v. ) | Case No. 06-3150-SAC |
| ) | |
| **JIM COLLINS, et. al.,** ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**COME NOW** Defendants, Collins, McKune, and Cummings, and hereby submit their memorandum in support of Defendants' Motion for Summary Judgment, pursuant to D.Kan. 7.6 and 56.1. Defendants state as follows:

### DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS

1. Plaintiffs Strope and Kingsley lawfully detained persons in the custody of the Kansas Secretary of Corrections, having been previously convicted of felony offenses. (Doc. 19, Exhibits A, B).

2. All Defendants are employed by the Kansas Department of Corrections ("KDOC"), and at all times relevant to this action were working at, or on the behalf of, the Lansing

Correctional Facility ("LCF"), where Plaintiffs were housed at times relevant to this action.  (Doc. 19).

3.  LCF is a facility operated by the KDOC, and thereby enforces the Kansas Administrative Regulations ("K.A.R.") as set out in K.A.R. 44-1-101 et. seq., (Doc. 19, p. 14).

4.  In 2002, KDOC enacted K.A.R. 44-12-313 which prohibits an inmate from possessing materials containing (among other things) nudity.  This action was taken by KDOC to further a safer prison environment, prevent harassment of staff, cut down on lewd conduct, and more effectively rehabilitate sex offenders.  (Doc. 19, p. 14).

5.  Both Plaintiffs purchased subscriptions to "Stuff" magazine for delivery inside the prison facility during the year 2006.  (Doc. 1).

6.  In February 2006, Defendant Jimmy Collins was working in his capacity as censor of incoming mail delivered to LCF.  (Attached Exhibit 1).

7.  In February 2006, Defendant Collins received and examined the March 2006 issue of "Stuff" magazine, two copies of which were addressed to Plaintiffs Strope and Kingsley (*Id*).

8.  On review, Defendant Collins determined that the issue contained content which is prohibited by K.A.R. 44-12-313, specifically nudity as defined by K.A.R. 44-12-313(b)(1), in the form of photographic depictions of female bare buttocks.  (*Id*, Attached Exhibit 3).

9.  Based on this decision, Defendant Collins sent both Plaintiffs notice that he had censored and restricted delivery of this issue.  (Doc. 1, Exhibits 2-A, 2-C).

10. Plaintiffs filed grievances with the facility, claiming that the magazines in question contained no nudity. (Doc. 19, Exhibits H, I).

11. All grievances filed relating to this issue were denied at the facility level, and appeal was reviewed by Defendant William Cummings, acting as Secretary of Corrections Designee. (Attached Exhibit 2).

12. Defendant Cummings reviewed a copy of the March 2006 issue of "Stuff" magazine, and determined Defendant Collins' response to have been appropriate as to all issues relating to that specific publication. (*Id*).

13. All appeals relating to the censorship of the March 2006 issue of "Stuff" magazine were denied by Defendant Cummings. (*Id*).

## NATURE OF THE CASE

Plaintiff's original complaint reads as follows:

1. Plaintiffs filed an action in this Court pursuant to 42 U.S.C. §1983, requesting injunctive relief from the policies and procedures applied by KDOC in regard to content deemed as nudity, as well as monetary relief in the form of compensatory and punitive damages. (Doc. 1).

2. Counts I & II of the complaint allege that Jim Collins violated Plaintiffs' First and Fourteenth Amendment rights by censoring specific issues of publications delivered to the facility. *Id.*

3. Count III of the complaint alleges that Warden David McKune has violated Plaintiffs' First Amendment rights through "his statute", K.A.R. 44-12-313. *Id.* Plaintiffs make no allegation that Defendant McKune personally participated in the censorship process or

the grievance process.

4. Count IV of the complaint alleges the Kansas Secretary of Corrections Designee violated Plaintiffs' First Amendment rights by Defendant Cummings' denial of Plaintiff Strope's grievance appeal.  *Id.*  Plaintiffs offer no evidence that Defendant Cummings personally participated in the censorship of Plaintiff's materials.

5. Count V of the complaint alleges that Kansas Secretary of Corrections Designee William Cummings has violated Plaintiffs' Fourteenth Amendment rights alleging that Defendant Cummings' response to Plaintiff Strope's grievance appeal was a pre-printed form which did not address the issue raised by Plaintiff Strope.  *Id.*

6. Count VI alleges that Warden David McKune deprived Plaintiffs of their Fourteenth Amendment rights by pre-screening publications for prohibited content.  *Id.*

7. Counts 7-9 allege that all Defendants have denied Plaintiffs their First and Fourteenth Amendment rights by an "unreasonable interpretation/application of K.A.R. 44-12-313. *Id.*

8. Counts 10 & 11 allege that Defendants McKune and Cummings have violated the Plaintiffs' Eight Amendment rights by showing a deliberate indifference to their well being by placing them in population with violent and "sexually hostile...predators". *Id.*

9. Defendants' prior counsel filed a motion to dismiss in this case, to which the Court issued an order dated 22 November 2006.  (Doc. 26).  In this order, the Court clarified that Plaintiffs brought three main causes of action against Defendants: 1) A violation of the First Amendment right to receive information, 2) A procedural

due process depravation of liberty, and 3) an Eighth Amendment violation by showing a deliberate indifference to Plaintiffs' well being.  (*Id* at ¶¶ 14-20.)

10.  Pursuant to that order, the Court granted Defendants qualified immunity as to the Fourteenth Amendment claims as they relate to the March 2006 issue of "Stuff" magazine, but allowed Plaintiffs to retain claims as to unspecified other issues of censorship.  The Court also granted all Defendants qualified immunity as to the Eighth Amendment claims.  The claims that were retained apply to the censorship of materials that purportedly do not fit the regulation, and a denial of due process as to censorship unrelated to the March 2006 issue of "Stuff".

11.  The issues which have survived initial dismissal are raised against each Defendant in his official and individual capacity.  (Doc. 1).

## STANDARD FOR SUMMARY JUDGMENT

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct 2505, 91 L.Ed.2d.202  (1996).  An issue is deemed to be genuine if there is sufficient evidence on each side that would permit "a rational trier of fact" to "resolve the issue either way," and a material fact is one that under the substantive law is "essential to the proper disposition of the claim".  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).  The mere existence of some factual dispute will not defeat an otherwise properly supported motion for summary judgment, the factual dispute must be material.  Renfro v. City of Emporia, 948 F.2d 1529, 1533

(10th Cir. 1991).

The moving party has the burden of showing the absence of a genuine issue of material fact. This burden can be met simply by "showing the district court that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party need not disprove the Plaintiff's claim, it need only establish that the factual allegations have no legal significance. Dayton Hudson Corp. v. Macerich Real Estate Co., 812 F.2d 1319, 1323 (10th Cir. 1987). The movant can satisfy its obligation by simply pointing out the absence of evidence on an essential element of the non-movant's claim. Adler, 144 F.3d at 671.

If the Defendants have met this burden, Plaintiffs may not rely upon mere allegations or denials contained in his pleadings or briefs. Plaintiffs must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation(s). Anderson, 477 U.S. at 248. Once Defendants have carried the burden under Rule 56(c), Plaintiffs must do more than simply showing doubt as to the material facts. Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1987).

The Court should construe Plaintiffs' pro se complaint liberally, Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and construe the allegations therein in a light most favorable to the Plaintiffs. However, Plaintiffs cannot rely upon conclusory allegations with no factual support in maintaining a viable civil rights action after they have failed to demonstrate that there is any genuine issue of material fact. A nonmoving party "cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary

judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 793 (10th Cir. 1988).

## ISSUES PRESENTED

**I. Does Defendants' policy of prohibiting receipt of materials containing nudity as defined by K.A.R. 44-12-303(b)(1) violate the First Amendment rights of Plaintiffs?**

**II. Is the Court required to defer to the judgment of prison officials in making factual censorship decisions as a part of day-to-day operations of the prison facility?**

**III.  Have Plaintiffs been denied due process in the seizure of incoming publications which are not specified in the complaint or supporting documents?**

**IV. Are Defendants entitled to sovereign and/or qualified immunity for actions they took in discharging their duties in this case?**

**V.  Have Plaintiffs properly demonstrated personal involvement by Defendant David McKune in the alleged depravation of Plaintiffs' Constitutional Rights, when no facts have been presented which suggest that Defendant McKune personally censored the materials, or ordered another to do so?**

## ARGUMENT AND AUTHORITY

**I.  Prison policies which censor materials received by inmates based on content have been expressly upheld as valid when challenged on First Amendment grounds.**

Inmates continue to be citizens for purposes of retaining some level of Constitutional rights, however the Courts recognize that the nature of imprisonment requires a necessary level intrusion on an inmate's rights. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).  Courts have recognized that prison administration is an "inordinately

7

difficult undertaking", and therefore a prisoner's Constitutional claims will be examined with due deference to the prison's stated goals. Turner v. Safely, 482 U.S. 78, 85, 107 S.Ct. 2254, 96 L.Ed.2d. 64 (1987).

Courts have previously analyzed First Amendment claims in the prison context pursuant to the United States Supreme Court decision in Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), which required the prison to adopt the "least restrictive means" in advancing a penological goal when it infringed on an inmate's right to free speech. The Court abandoned this heightened standard for one that gave more deference to prison administrators as set out in Turner, 482 U.S. 78 at 87. The standard set out in Turner dictates that a prison need only show that the actions taken were "reasonably related to a legitimate penological interest". *Id* at 89. In weighing the depravation of the right against the prison's need or interest, the Court is to look to four factors:

> "First, is there a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it? Second, are there 'alternative means of exercising the right that remain open to prison inmates'? Third, what 'impact' will accommodation of the right...have on guards and other inmates, and the allocation of prison resources generally'? And, fourth, are 'ready alternatives' for furthering the government interest available?" Beard v. Banks, ____ U.S. ____, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006), quoting Turner, 482 U.S. 78 at 89.

Regulations based on content were addressed in Thornburgh v. Abbott, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). In Thornburgh, there was not a specific issue related to publications which contained nudity. The challenged regulation allowed the warden of the prison facility to reject a publication from being delivered inside the prison, when they contained materials which were deemed to be harmful to the state of institutional security. The claim was brought by publishers who wished to deliver their materials to inmates inside the facility. The

Court held that the warden was entitled to broad discretion in rejecting materials based on content, and that the regulation was reasonably related to the legitimate objective of maintaining institutional security. *Id* at 417.  This holding expressly allows for incoming mail to be censored for content.  In following the holding in Turner, the Ninth Circuit held in favor of prison administrators, when challenged on First Amendment grounds for censorship of incoming publications based on content of nudity.  Mauro v. Arpaio, 188 F.3d 1054 (9th Cir. 1999).  When the Court analyzes the nature of the regulation in light of current case law and the stated reasons for enactment, it should come to the conclusion that there are rational governmental interests being advanced, and the restriction on incoming material is rationally related to those interests. (See Doc. 19, p. 14).

If the Court determines the regulation is valid, the only claim which can remain is whether prison officials properly applied the regulation.

**II.  The Court should defer to prison officials for subjective judgments as to whether an incoming publication contains prohibited content.**

The Court recognized in Turner that day to day prison operations are difficult tasks, and the courts should take every opportunity to defer to prison administrators to make decisions, as they are far better equipped to do so.  Turner, 482 U.S. 78 at 89.  The Court specifically held that judgments regarding prison security "are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in these matters".  *Id* at 86.

While a court substituting its own judgment for that of prison officials in an individual case is not expressly prohibited, other Courts have declined to interject their subjective opinion in place of determinations made by prison officials.  (Wiggins v. Sargent, 753 F.2d 663, 668 (8th Cir. 1985), "we should hesitate to substitute our judgment for that of prison officials, since they normally must be allowed an area of discretion within which to deal with institutional concerns."; Espinoza v. Wilson, 814 F.2d 1093, 1095 (3rd Cir. 1987), holding that the court properly defers to a warden's decision that censoring certain types of homosexual literature leads to a safer prison; Koutnik v. Brown, 351 F.Supp.2d 871 (W.D. Wis. 2004), prison officials are given a certain amount of deference as to what constitutes gang-related material open to censorship).  Defendants urge this Court to take the same approach in this case.

As set out in Attached Exhibit 1, Defendant Collins is charged with the duty to inspect all incoming mail for contraband or prohibited content as defined in K.A.R. 44-12-313.  Plaintiffs do not challenge the regulation as unconstitutional, they only claim that the specific issue seized as set out in the grievances and complaint do not contain nudity as defined by regulation.  If the Court were to take the position that every subjective decision made by Defendant Collins is subject to review not only by the grievance process, but also the District Court, it would lead to an overwhelming amount of prisoner litigation which seeks to overrule the decisions of those charged with screening incoming mail.  Defendants urge this Court to find that Defendant Collins has properly supplemented his decision with articulated facts which could lead a reasonable person in his position to find that the March 2006 issue of "Stuff" magazine contained prohibited content, and therefore required confiscation.  Defendants have attached the issue in question as "Exhibit 3" for the Court's review, should it be necessary.

### III. Plaintiffs have failed to allege that specific publications were seized by the facility without proper notification or due process.

An inmate who has materials seized due to censorship is entitled to some amount of due process upon the seizure. Jacklovich v. Simmons, 392 F.3d 420 (10th Cir. 2004). An inmate need not be afforded the same due process that an ordinary citizen would receive, but he is still entitled to "minimal procedural safeguards" to insure a "reasonable opportunity to protest" the decision. Procunier v. Martinez, 416 U.S. 396, 417, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974).

As the Court has already noted, the Plaintiffs were afforded due process as to the censorship of the March 2006 issue of "Stuff", and those claims were previously dismissed. In its order partially denying dismissal as to the due process claims, the Court references the seizure of "other magazines" as set out in the complaint which were not subject to dismissal based on a lack of factual record. On review of Plaintiff's complaint, Defendants can find no specific example of other seizures of Plaintiffs' publications on arrival at the facility. While Plaintiffs make a note to several magazine titles which they claim are prohibited, there is no allegation or evidence containing specific issues of those publications which were seized, nor grievances which relate to specific issues of publications which were seized, other than the March 2006 issue of "Stuff" magazine. The prison's grievance system for seized publications is clearly laid out in the Martinez report, and as the Court has previously noted, this procedure was followed in regard to the March 2006 issue of "Stuff". Defendants can find no sufficient allegation that contends Defendants did not provide Plaintiffs with due process regarding other publication seizures. All exhibits of Plaintiffs' complaint are multiple and duplicate grievances which were filed contesting the general application of the challenged regulation, and expressing Plaintiff

11

Strope's discontent with the answers he had received, but contained no new examples of publications being seized.

**IV. Defendants are entitled to sovereign and qualified immunity as to the monetary damages sought by Plaintiffs.**

**A. Absolute immunity**

An action against a state official in his official capacity is not a suit against the official, but against the official's office, and accordingly is no different than a suit against the State itself. Will v. Michigan Dep't of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The Supreme Court has held that neither a state nor state agencies are "persons" within the meaning of 42 U.S.C. §1983. *Id* at 71. The Eleventh Amendment bars suits against the State of Kansas or any of its agencies or departments. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

Eleventh Amendment immunity defends an official not only from liability, but also from the burdens of the lawsuit process. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 131, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1993). Accordingly, immunity questions must be resolved at the earliest stage of the proceedings. Hunter v. Bryant, 502 U.S. 731, 745, 102 S.Ct. 2690, 73 L.Ed.2d 589 (1991). As all Defendants were state officials discharging their official duty as it relates to this action, they are entitled to sovereign immunity as to this action.

**B. Qualified Immunity**

The defense of qualified immunity used to shield executive officials from liability in their individual capacities has long been recognized as needed to "protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of

their official duty". Harlow v. Fitzgerald, 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 369 (1982). A government official performing a discretionary function is generally shielded from civil damages, so long as the conduct does not violate a clearly established right which a reasonable person would have known of. Douglas v. Dobbs, 419 F.3d 1097, 1100 (10th Cir. 2005). If a defendant raises the issue of qualified immunity, the burden shifts to the Plaintiff to show that the defendant is not entitled to immunity. Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001). In order to overcome qualified immunity, the Plaintiff must then show that a constitutional or statutory right has been violated, and that the right is clearly established. Garramone v. Romo, 94 F.3d 1446, 1449 (10th Cir. 1996). A right is clearly established if the right is sufficiently clear and a reasonable official would know that his conduct violates that right. Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

The Plaintiffs in this case have failed to show that his First Amendment right has been violated, nor has he shown that a reasonable official in each position would know that his conduct was unlawful and infringed on the Plaintiffs' rights. A subjective determination as to what constitutes nudity as defined by regulation cannot be construed as unreasonable conduct which the actor should have known was unlawful. Absent a responsive showing that the right was clearly established, the Defendants should be granted qualified immunity in their individual capacities.

**V. Plaintiffs have not established personal participation by Defendant David McKune in the alleged depravation of Plaintiffs' Constitutional Rights, and a claim under the theory of *respondeat superior* may not be sustained on an action brought pursuant to 42 U.S.C. §1983 without a specific showing that Defendant ordered or specifically authorized**

**the actions which lead to the alleged Constitutional violation.**

It is clearly established that a named Defendant must have personally participated in the depravation of a Plaintiff's Constitutional rights in order to sustain individual liability for that Defendant. Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996). Proceeding strictly on a theory of *respondeat superior* is prohibited when bringing a claim under 42 U.S.C. §1983, as a Plaintiff must show that the person alleged has authorized, supervised, caused, or participated in the acts. Kaiser v. Lief, 874 F.2d 732, 736 (10th Cir. 1989). It is not enough to simply show that a Defendant's employees engaged in behavior which violated the Constitutional rights of another, it must be shown that "a deliberate, intentional act by the supervisor to violate Constitutional rights." Jenkins, 81 F.3d 988 at 994-95. Absent such a showing, a Plaintiff may not impute liability for the actions of others.

Showing such participation requires a Plaintiff show an "affirmative link" between the Defendant and the conduct alleged. Holland v. Harrington, 268 F.3d 1179 (10th Cir. 2001). Evidence of this link may be presented in various forms, such as personal participation, failure to supervise, or his exercise of control over the actions. Green v. Branson, 108 F.3d 1296, 1302 (10th Cir. 1997). Before such evidence can establish liability, however, it must be shown that the supervisor's actions were more than a mere right to control employees. Serena v. Colorado Dept. of Corrections, 455 F.3d 1146 (10th Cir. 2006), quoting Bass v. Robinson, 167 F.3d 1041, 1048 (6th Cir. 1999).

In this case, there is arguably an inference which can be made that the person(s) responsible for enactment of K.A.R. 44-12-313 have caused a Constitutional violation by implicitly authorizing its enforcement. However, this approach would rely on two facts: 1) that

the regulation itself is invalid, and directly causes a Constitutional depravation, and 2) that the evidence shows the person alleged is, in fact, responsible for the authorization of the conduct. Here, Plaintiffs have made no showing that Defendant McKune ever authorized, supervised, caused, or participated in the censorship of Plaintiffs' publications.  Further, Plaintiffs present no evidence that Defendant McKune was responsible for the enactment of K.A.R. 44-12-313.  The sole theory upon which Plaintiffs' claims against Defendant McKune lies is that Defendant Collins was enforcing "his statute", as claimed in the complaint.  This theory cannot give rise to liability on the part of Defendant McKune, and he should be dismissed from this action.

## CONCLUSION

Since the Court has previously disposed of Plaintiffs' Due Process claims as it regards the seizure of the March 2006 issue of "Stuff" magazine, the surviving questions are only: 1) Whether K.A.R. 44-12-313 is Constitutional in a First Amendment analysis, 2) Whether the regulation was properly applied, and 3) Whether Plaintiffs have shown that other publications have been seized without Due Process.  Plaintiffs must fail on all grounds.  Regulations similar to K.A.R. 44-12-313 have been upheld in other circuits, and Defendants urge this Court to take the same approach here.  Matters of censorship and the application of administrative regulations is a task best left to prison officials, as they are better suited to make such decisions.  Plaintiffs have failed to specifically and properly allege that other publications were seized from them and they were denied Due Process as to those publications. All Defendants are entitled to sovereign and qualified immunity on all actions taken in the faithful discharge of their duties.  Finally, Plaintiffs have failed to show personal participation in these events by Defendant David McKune.  For the above stated reasons, Defendants respectfully request this Court grant

Summary Judgment in their favor.

                        Respectfully Submitted,

                        OFFICE OF ATTORNEY GENERAL
                        PAUL MORRISON


                        s/Trevin E. Wray
                        Trevin Erik Wray #21165
                        Assistant Attorney General
                        120 SW 10th, 2nd Floor
                        Topeka, KS 66612-1597
                        (785) 368-8424.


## **CERTIFICATE OF SERVICE**

     I hereby certify that on this 1st day of March 2007, I mailed via first class U.S. Mail, postage prepaid, a true and correct copy of the foregoing to:

          Michael Lee Strope
          Hutchinson Correctional Facility
          PO Box 1568
          Hutchinson, KS 67504

          Alan W. Kingsley
          Lansing Correctional Facility
          301 E. Main
          Lansing, KS 66043


                        s/Trevin Wray
                        Trevin Wray