# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**MICHAEL LEE STROPE and**
**ALAN W. KINGSLEY,**

      **Plaintiffs,**

      **v.**                                 **Case No.  06-3150-JWL**

**JIM COLLINS, et al.,**

      **Defendants.**
_____

## MEMORANDUM AND ORDER

In this lawsuit, plaintiffs Michael Lee Strope and Alan W. Kingsley, inmates who are proceeding pro se, bring a claim pursuant to 42 U.S.C. § 1983 against various prison officials at Lansing Correctional Facility.  Plaintiffs allege constitutional violations of their First Amendment right to receive information while in prison and their Fourteenth Amendment right to procedural due process arising from the defendants' censorship of magazines based on what they claim to be prohibited nudity contained therein.  This matter is before the court on the parties' cross motions for summary judgment (docs. #38 & #46).  For the reasons explained below, plaintiffs' damage claims against defendants in their official capacities are dismissed for lack of jurisdiction.  Defendants' motion is granted as to plaintiffs' procedural due process claim and both parties' motions are otherwise denied without prejudice to be renewed after discovery has been completed and the final pretrial order has been entered in this case.

## STATEMENT OF MATERIAL FACTS

Plaintiffs are inmates within the Kansas Department of Corrections.  They bring this lawsuit against defendants Jim Collins, who is the mail review officer at Lansing Correctional Facility; David R. McKune, the warden; and William Cummings, a designee of the Kansas Secretary of Corrections.  The court's understanding of the facts of this case is framed by the allegations in plaintiffs' verified complaint, which the court accepts as true for purposes of resolving the defendants' motion for summary judgment and as addressing their evidentiary burden on their own motion for summary judgment.  *See Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (pro se prisoner's verified complaint is treated as an affidavit and may be used as evidence at the summary judgment stage).  Those allegations are described in detail in a prior order of this court.  *See generally Strope v. Collins*, Case No. 06-3150-JWL, 2006 WL 3390393, at *1-*11 (D. Kan. Nov. 22, 2006).  Briefly summarized, plaintiffs allege that defendants have violated their constitutional rights by censoring certain publications on the grounds that they contain nudity.  The court construed the allegations in plaintiffs' complaint to state three potential types of constitutional violations: (1) violation of the First Amendment right to receive information while in prison; (2) procedural due process deprivation of liberty claim; and (3) Eighth Amendment deliberate indifference claim.  *See id.* at *7.  The court held, however, that plaintiffs' complaint fails to state a claim upon which relief can be granted with respect to plaintiffs' Eighth Amendment deliberate indifference claim and, furthermore, that defendants are entitled to qualified immunity on

plaintiffs' procedural due process claim concerning the March 2006 issue of *Stuff* magazine. *See id.* at *9-*10.

Turning to the verified arguments plaintiffs have submitted in connection with the parties' cross motions for summary judgment, plaintiffs state that around the time when defendants enacted a policy prohibiting inmates from possessing pornographic materials in 2004, the prison posted two separate memos to prisoners. The first of these stated (paraphrased to the best of plaintiffs' memory) that publications such as *Maxim*, *GQ*, *FHM*, *Stuff*, *Vibe*, *Victoria's Secret*, etc. would be exempt from the policy. The second memorandum advised prisoners that any materials containing nudity could be removed from the publications or darkened out with a marker.

In February of 2006, defendant Collins was working in his capacity as censor of incoming mail at Lansing Correctional Facility when he received and examined plaintiffs' March 2006 issues of *Stuff* magazine. He determined that the issue contained content which is prohibited by K.A.R. 44-12-313—specifically, nudity in the form of photographic depictions of bare buttocks of females. Defendants claim to have censored the publication based on a regulation enacted by the Kansas Department of Corrections that prohibits inmates from possessing sexually explicit materials. This regulation states as follows:

**Sexually explicit materials.**
(a) No inmate shall have in possession or under control any sexually explicit materials, including drawings, paintings, writing, pictures, items, and devices.
(b) The material shall be considered sexually explicit if the purpose of the material is sexual arousal or gratification and the material meets either of the following conditions:

3

> (1) Contains nudity, which shall be defined as the depiction or display of any state of undress in which the human genitals, pubic region, buttock, or female breast at a point below the top of the aerola is less than completely and opaquely covered; or
>
> (2) contains any display, actual or simulated, or description of any of the following: [listing sexual intercourse, sodomy, masturbation, bestiality, and sadomasochistic abuse].

K.A.R. 44-12-313.  Plaintiffs appealed the censorship.  The KDOC upheld the censorship decision, finding it appropriate and correct.  In response to plaintiffs' objections to K.A.R. 44-12-313, defendant Cummings, a designee of the Secretary of Corrections, explained as follows:

> The Secretary of Corrections made the decision to prohibit sexually explicit publications and items from correctional facilities for several reasons. Some of these reasons are as follows:
>
> 1. In September 2002 the department restricted inmates who are managed as sex offenders from possessing or viewing such publications. Approximately 25% of all inmates are sex offenders.  The department could not effectively restrict sex offenders from having access to such materials if other inmates continued to possess these [sic] them.
>
> 2. There have been complaints from employees about being required to view these materials while performing their duties.  There is a potential for staff to file sexual harassment complaints due to exposure to the publications and materials in the workplace environment as well as from comments made by some inmates when making comparisons between individual employees and individuals in the publications or other materials.
>
> 3. An increasing number of correctional agencies nationally have taken this action in order to more efficiently and effectively manage the correctional environment.
>
> 4. The department was expending considerable staff time at several levels to review publications to determine what was allowable and what was not, in processing and deciding appeals from the initial decision, and in processing notifications and other information related to ordering, receiving, or failing to receive such publications.  The department will be better able to utilize its resources as a result of this action.

Compl. (doc. #1), Exs. 3D & 3E.

4

Plaintiff Strope contends that he also did not receive his November 2005 issue of *Stuff* magazine. Again, he appealed the censorship. And, again, the KDOC upheld the censorship decision as "appropriate." The record reflects that this particular issue of *Stuff* "was withheld due to content that could present a threat to the safety, security, and order of the correctional facility" because it contained "detailed instructions for tattooing and for making a tattoo gun." Also, it contained sexually explicit photographs "of bare female buttocks."

On February 26, 2006, plaintiff Strope completed a Special Purpose Order (SPO) for a supplemental issue of the November 2005 issue of *Stuff*. KDOC personnel refused to process the SPO and mail the order. Plaintiff Strope's grievances and appeals were answered with responses to the effect that they were repetitious and had been answered previously.

Plaintiff Strope also now contends that defendants have censored his February 2007 issue of *Stuff* magazine.

Plaintiffs seek summary judgment on the grounds that defendants' actions violated their constitutional rights. Defendants, on the other hand, seek summary judgment on the following grounds: (1) their actions did not violate plaintiffs' constitutional rights, (2) they are entitled to sovereign and qualified immunity on plaintiffs' damage claims, and (3) plaintiffs have not established defendant McKune's personal participation in the alleged deprivation of plaintiffs' constitutional rights.

## SUMMARY JUDGMENT STANDARD[1]

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002).  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998)).  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  *Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack

---

[1] Plaintiffs and defendants have both filed motions for summary judgment.  The court will address the motions together.  The legal standard does not change if the parties file cross-motions for summary judgment.  Each party has the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Atlantic Richfield Co. v. Farm Cr. Bank*, 226 F.3d 1138, 1148 (10th Cir. 2000).

of evidence for the other party on an essential element of that party's claim. *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256; *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Adams,* 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## ANALYSIS

For the reasons explained below, the court finds that genuine issues of material fact preclude summary judgment in favor of either party on plaintiffs' claim based on their First

7

Amendment right to receive information while in prison. Thus, both sets of parties' motions for summary judgment on that issue are denied. The summary judgment record does, however, reflect that plaintiffs received all of the procedural due process to which they were constitutionally entitled and therefore defendants' motion for summary judgment on plaintiffs' procedural due process claim is granted. Defendants correctly contend that they are entitled to sovereign immunity on plaintiffs' official capacity claims for damages and those claims are dismissed for lack of jurisdiction, but defendants' motion based on sovereign immunity is denied as to plaintiffs' claims for prospective injunctive relief. The summary judgment record does not, however, establish that defendants are entitled to qualified immunity on plaintiffs' First Amendment claims against them in their individual capacities and therefore that aspect of defendants' motion is denied. Likewise, defendants' motion is denied as to plaintiffs' claims against defendant McKune because a genuine issue of material fact exists concerning his personal participation in the alleged constitutional deprivation.

## I.     First Amendment Right to Receive Information

Both sets of parties seek summary judgment based on plaintiffs' claimed violation of their First Amendment right to receive information. Inmates have a First Amendment right to receive information while in prison to the extent the right is not inconsistent with prisoner status or the legitimate penological objectives of the prison. *Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir. 2004). "[W]hen a prison regulation impinges on inmates' constitutional

rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *accord Jacklovich*, 392 F.3d at 426.  In determining whether the regulation is reasonably related to legitimate penological interests, the court must engage in a four-factor analysis of "(1) whether a valid and rational connection exists between the regulation and the asserted legitimate governmental interest, (2) whether alternative means of exercising the constitutional right remain available to inmates, (3) any effect accommodating the right would have on guards and inmates, and (4) the absence of ready alternatives."  *Jacklovich*, 392 F.3d at 426 (citing *Turner*, 482 U.S. at 89-90).

Defendants' argument that the regulation is valid is not much more persuasive now than it was when they raised the issue previously in their motion to dismiss for failure to state a claim upon which relief can be granted.  The only meaningful difference is that they have now cited the reasons briefly stated in defendant Cummings' response to plaintiffs' grievance appeal underlying the Secretary of Corrections' prohibition on sexually explicit publications, i.e., that the department could not effectively restrict sex offenders from having access to such materials if other inmates continued to possess them, possibility of sexual harassment complaints attributable to staff exposure to publications and materials, that correctional agencies nationally have taken this action, and minimizing the amount of time spent by staff in reviewing such publications.  Based on this evidence, defendants advance a one-sentence argument that "[w]hen the Court analyzes the nature of the regulation in light of current case law and the stated reasons for enactment, it should come to the conclusion that there are rational governmental interests being advanced, and the restriction on incoming material is

rationally related to those interests." Mem. in Support of Defs.' Mot. for Summary Judgment (doc. #39) at 9. Significantly, defendants still have not discussed their asserted justifications for the regulation under the required four-factor analysis.

As the court alluded to in its prior order, a district court must have an adequate factual basis for evaluating whether a regulation banning prison materials containing nudity such as the Kansas regulation at issue in this case passes constitutional muster under the four-factor *Turner* analysis. *See Strope v. Collins*, Case No. 06-3150-JWL, 2006 WL 3390393, at *8 (D. Kan. Nov. 22, 2006) (citing *Ramirez v. Pugh*, 379 F.3d 122 (3d Cir. 2004)). Although the District of Columbia Circuit upheld a similar prison regulation called the Ensign Amendment which is applicable within the Federal Bureau of Prisons without requiring an extensive factual record, *see Amatel v. Reno*, 156 F.3d 192 (D.C. Cir. 1998), the Third Circuit has held that the district court must have a more extensive factual record to support the ban's reasonableness, *see Ramirez*, 379 F.3d at 122, *on remand to* — F. Supp. 2d —, Case No. 2007 WL 1031547, at *1-*15 (M.D. Pa. Mar. 29, 2007) (publication forthcoming) (upholding the constitutionality of the Ensign Amendment "[a]fter reviewing the developed factual record" after discovery had ended based on the parties' cross motions for summary judgment). Precedent indicates that the Tenth Circuit would follow the approach taken by the Third Circuit. *See generally, e.g.*, *Jacklovich*, 392 F.3d at 428-32 (reversing district court's grant of summary judgment in favor of prison officials based on various regulations and policies promulgated by the Kansas Department of Corrections pertaining to inmates' receipt of books, newspapers, and periodicals because questions of fact existed under the four

*Turner* factors, thus precluding summary judgment); *see also Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002) ("*Turner* thus requires courts, on a case-by-case basis, to look closely at the facts of a particular case and the specific regulations and interests of the prison system in determining whether prisoners' constitutional rights may be curtailed."). Here, the parties have not yet commenced discovery. They filed their cross motions for summary judgment almost immediately after the court issued its ruling on defendants' Rule 12(b)(6) motion. Consequently, the factual record, and correspondingly the parties' discussion concerning the propriety of the regulation under the applicable legal standard, is not much more illuminating than were the parties' arguments on defendants' Rule 12(b)(6) motion. Based on this sparse factual record and in the absence of any meaningful argument from the parties under the four *Turner* factors, a genuine issue of material fact exists precluding summary judgment in favor of either party about whether the regulation is reasonably related to legitimate penological interests.

This is particularly so in this case because prior case law has not addressed the validity of the specific type and degree of censorship at issue in this case. For example, defendants contend that the court should follow *Mauro v. Arpaio*, 188 F.3d 1054 (9th Cir. 1999), in which the Ninth Circuit upheld a jail's policy of excluding material containing nudity. The policy at issue in that case, however, banned all sexually explicit materials that "show frontal nudity," *id.* at 1063 (Schroeder, J., dissenting), unlike the as-applied challenge mounted here, which involves the censorship of entire publications because they contain what appears to be a few photographs of women's partially bare buttocks. The federal BOP

regulations upheld in *Amatel* and on remand to the district court in *Ramirez* was also narrower than the KDOC regulation at issue here, as the Ensign Amendment at issue in those cases bans materials that are "sexually explicit or feature[] nudity" and, in turn, defines "nudity" to mean "a pictorial depiction where genitalia or female breasts are exposed." 156 F.3d at 193; *see also Ramirez*, 379 F.3d at 125 (noting the federal BOP regulations "are clearly targeted to the receipt of inmates of softcore and hardcore pornography"). Thus, there appears to be no precedent upholding the constitutionality of a regulation that contains as broad of a prohibition as the KDOC regulation in the manner in which it is being applied in this case.

Defendants also argue that they are entitled to summary judgment because the court should defer to prison officials for subjective judgments as to whether an incoming publication contains prohibited content. Defendants contend that "Plaintiffs do not challenge the regulation as unconstitutional, they only claim that the specific issue seized as set out in the grievances and complaint do not contain nudity as defined by regulation." The court disagrees with defendants' characterization of plaintiffs' allegations, as the court understands plaintiffs' claims in this case to be more broadly focused on the notion that it is unconstitutional for prison officials to deny them access to photos with women's bare buttocks regardless of whether that denial is occurring under the plain language of the KDOC regulation or by virtue of the manner in which defendants are screening the incoming mail. Moreover, the Tenth Circuit has stated that although federal courts should give deference to state prison authorities, that does "not mean that every prison regulation is insulated from

12

review no matter what the facts might be." *Jacklovich*, 392 F.3d at 426. "'When a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights.'" *Id.* (quoting *Procunier v. Martinez*, 416 U.S. 396, 405-06 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989)).

In sum, neither party has presented the court with an adequately developed record from which the court could meaningfully evaluate the asserted governmental interest, whether a valid and rational connection exists between the regulation and that interest, whether alternative means of exercising the constitutional right remain available to inmates, the effect accommodating the right would have on guards and inmates, or the absence of ready alternatives. Consequently, neither party has established that it is entitled to judgment as a matter of law on this claim. Because genuine issues of material fact exist concerning whether defendants' withholding of publications from plaintiffs is reasonably related to legitimate penological interests, then, both parties' motions are denied on plaintiffs' First Amendment claim. The court can envision, however, that this issue might be capable of resolution on cross motions for summary judgment if the parties were to present adequately developed records on this claim. Accordingly, the court will deny the parties' motions without prejudice to be renewed after discovery is complete and the final pretrial order has been entered in this case. Hopefully at that time the parties will be capable of presenting their arguments on this issue in a much more developed and meaningful fashion.

## II.    **Procedural Due Process**

Inmates have a qualified liberty interest in uncensored communications that are protected by the First Amendment. *Procunier v. Martinez*, 416 U.S. 396, 418 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989); *Jacklovich*, 392 F.3d at 433. Thus, inmates have a right to procedural due process when publications are rejected. *Jacklovich*, 392 F.3d at 433. This means that the decision to restrict access to protected communications must be accompanied by "minimal procedural safeguards." *Procunier*, 416 U.S. at 417-19; *Jacklovich*, 392 F.3d at 433. The inmate must receive notice, an opportunity to be heard, and an opportunity for appeal to a prison official who was not involved in the original censorship decision. *Procunier*, 416 U.S. at 418-19; *Jacklovich*, 392 F.3d at 433.

The court has carefully reviewed the record and concludes that plaintiffs were afforded procedural due process in the denial of access to publications. This includes the March 2006 issue of *Stuff*, *see Strope*, 2006 WL 3390393, at *9 (concluding that plaintiffs were afforded procedural due process with respect to this issue of *Stuff*), as well as the November 2005 issue of *Stuff* and the subsequent denial of an SPO for the supplemental issue of the November 2005 issue of *Stuff*. Plaintiff Strope was given written notice of the withholding of the November 2005 issue by way of an "Appeal of Censored Material" dated October 19, 2005. He was told verbally about the refusal to process his SPO for the supplemental issue. Additionally, he had the opportunity to grieve those censorships and appeal those decisions to prison officials who were not involved in the original censorship

14

decisions.    Plaintiffs have been afforded all of the procedural due process that is constitutionally required.  With respect to the February 2007 issue of *Stuff*, plaintiffs have not submitted any evidence to suggest that they were denied notice, an opportunity to be heard, or an opportunity to appeal.  Thus, plaintiffs have not raised a genuine issue of material fact that they were denied procedural due process with respect to this particular issue of *Stuff*.  With there being no other lingering procedural due process issues, then, defendants are entitled to summary judgment on plaintiffs' procedural due process claim.

### III.    Sovereign Immunity on Official Capacity Claims

Defendants argue that they are entitled to sovereign immunity on plaintiffs' official capacity claims against them because they were state officials discharging their official duties in their actions relating to this lawsuit.  "When a suit alleges a claim against a state official in his official capacity, the real party in interest in the case is the state, and the state may raise the defense of sovereign immunity under the Eleventh Amendment."  *Callahan v. Poppell*, 471 F.3d 1155, 1158 (10th Cir. 2006) (quotation omitted).  Under these circumstances, sovereign immunity generally bars actions in federal court for damages against state officials acting in their official capacities.  *Harris v. Owens*, 264 F.3d 1282, 1289 (10th Cir. 2001); *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000); *Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 631 (10th Cir. 1998).  Plaintiffs do not assert any facts from which the court could find that defendants waived their Eleventh Amendment immunity in this case.  Furthermore, Congress did not abrogate the states' sovereign immunity when it enacted §

1983.  *Quern v. Jordan*, 440 U.S. 332, 338-45 (1979); *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).  Because all of the defendants are state officials who were acting in their official capacities, then, the court lacks jurisdiction over plaintiffs' official capacity claims for damages.  *Kikumura v. Osagie*, 461 F.3d 1269, 1299 (10th Cir. 2006); *see, e.g.*, *White v. State of Colo.*, 82 F.3d 364, 366 (10th Cir. 1996) (affirming district court's grant of summary judgment on § 1983 claims asserted against prison officials in their official capacities based on Eleventh Amendment sovereign immunity).  To this extent, plaintiffs' claims are dismissed for lack of jurisdiction.

Nonetheless, "the *Ex parte Young* doctrine enables a plaintiff to circumvent the Eleventh Amendment."  *Frazier v. Simmons*, 254 F.3d 1247, 1253 (10th Cir. 2001).  Under this doctrine, a suit against a state official in his official capacity seeking prospective equitable relief is permitted, while a suit requesting retroactive relief is considered to be a suit against the state.  *Id.*; *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State.").  In determining whether the plaintiffs seek prospective injunctive relief, the court must examine the complaint to see whether it gives "any indication" that plaintiffs might be entitled to prospective injunctive relief.  *Frazier*, 254 F.3d at 1255.

The court has examined the request for relief contained in plaintiffs' complaint, and concludes that it sufficiently indicates that plaintiffs are seeking prospective injunctive relief.

Plaintiffs seek "[a] declaratory judgment . . . re. the rights to receive the magazines quoted herein, and what constitutes nudity," and "[i]njunctive relief . . . that grants [them the right] to receive such magazines as quoted herein . . . and an order prohibiting prison officials from unlawful censorships, and seizures, based on their controlling policies as they are [interpreting] them now." Plaintiffs' complaint contains references to the March 2006 issue of *Stuff* as well as to the magazines "*King*, *FHM*, *Vibe*, *Stuff*, *GQ*, etc." Liberally construing these allegations, plaintiffs adequately indicate that they are challenging the nudity regulation itself and the manner in which it may be applied prospectively. *See, e.g.*, *Frazier*, 254 F.3d at 1255 (affirming district court's denial of Eleventh Amendment immunity where plaintiff had provided a sufficient indication that he was seeking equitable relief). Accordingly, defendants' motion for summary judgment is denied to the extent that plaintiffs are seeking prospective injunctive relief from the defendants in their official capacities.

## III.    Qualified Immunity on Individual Capacity Claims

Generally, government officials performing discretionary functions are shielded from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In order for a right to be "clearly established," it must be established in a particularized, relevant sense: the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640. "Once a defendant has raised qualified immunity

as an affirmative defense on a motion for summary judgment, the plaintiff bears the heavy two-part burden of demonstrating that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged conduct." *Reeves v. Churchich*, 484 F.3d 1244, 1250 (10th Cir. 2007). The court must first determine "whether the plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *accord Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006). "As to the second element, law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." *Trask*, 446 F.3d at 1043 (quotation omitted). If the plaintiff meets this burden, the defendant then bears the usual summary judgment burden of showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *Id.*

Because the court is granting summary judgment on plaintiffs' procedural due process claim, the only claim remaining is their First Amendment claim. Here, viewing the scant evidence in the summary judgment record in the light most favorable to plaintiffs and accepting that evidence as true, plaintiffs have most assuredly set forth a constitutional violation. Plaintiffs contend that the types of publications being censored contain images like those seen daily on television programs such as *Baywatch*, *C.S.I. Miami*, etc. Assuming prisoners have access to those television programs, then, there would not seem to be much of a penological interest in restricting access to the publications, but not television programs containing similar content. Also, according to plaintiffs, the prison posted a memorandum

stating *Stuff* and similar publications would be exempt from the policy because they were not nudity publications.  Additionally, they contend that the prison posted another memorandum stating essentially that nude photographs would be redacted from publications rather than confiscating the entire publications.  Thus, defendants may not even be enforcing the regulation properly.  Based on this evidence, a rational trier of fact could conclude that defendants' censorship of entire publications based on the fact that they contain a few photographs of women which reveal their partially bare buttocks is not reasonably related to a legitimate penological interest.

Additionally, the law is clearly established that inmates have a First Amendment right to receive information while in prison and that prison officials may not censor prisoners' incoming publications unless the censorship is reasonably related to a legitimate penological interest.  *See Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989); *Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir. 2004); *cf. Farmer v. Perrill*, 288 F.3d 1254, 1260 (10th Cir. 2002) (prisoner's constitutional right not to be subjected to a humiliating strip search in full view of several others unless the procedure was reasonably related to a legitimate penological interest was clearly established).  Consequently, a reasonable official would know that such censorship, in the absence of a legitimate penological interest, would violate an inmate's constitutional rights.

Plaintiffs, then, have met their burden to overcome defendants' qualified immunity defense at this procedural juncture and the burden shifts to the defendants to meet their usual summary judgment burden of showing that there are no genuine issues of material fact and

19

that they are entitled to judgment as a matter of law.  For reasons explained previously with respect to this claim, defendants have not met this burden.  Accordingly, the current summary judgment record does not establish, at least at this procedural juncture, that defendants are entitled to qualified immunity on this claim.  *See, e.g., Farmer*, 288 F.3d 1254 (10th Cir. 2002) (affirming district court's denial of qualified immunity defense on summary judgment where genuine issues of material fact existed under *Turner* analysis concerning whether there was a legitimate, penological need for the prison regulation at issue); *cf. Boyd v. Stalder*, Case No. 03-1249, 2006 WL 3813711, at *7 (W.D. La. Dec. 27, 2006) (denying defendants' claim of qualified immunity on ban of all publications that featured women in "sexy poses").

## V.     Claim Against Defendant David McKune

Defendants' final argument in support of their motion for summary judgment is that defendant McKune, who is the warden at LCF, is entitled to summary judgment because he did not personally participate in the alleged constitutional deprivation.  Under § 1983, government officials are not vicariously liable for the misconduct of their subordinates. *Serna v. Colorado Dep't of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006).  Instead, supervisors are only liable for their own culpable involvement in the violation of a constitutional right.  *Id.*  The supervisor must be personally involved in the constitutional violation and a sufficient causal connection must exist between the supervisor and the constitutional violation.  *Id.*  In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of subordinates, a plaintiff must show an affirmative link between the

20

supervisor and the violation, "namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates." *Id.* This may include evidence of the supervisor's personal participation, exercise of control or direction, or failure to supervise. *Id.* at 1152. Supervisory liability must be based upon active unconstitutional behavior, and more than a mere right to control employees. *Id.* at 1153. Moreover, mere negligence is not enough to hold a supervisor liable under § 1983; a plaintiff must establish that the supervisor acted knowingly or with deliberate indifference that a constitutional violation would occur. *Id.* at 1152.

In this case, the summary judgment record contains ample evidence concerning defendant McKune's knowledge of and personal involvement in the alleged constitutional violation. The attachment to plaintiffs' verified complaint as well as the exhibits to their verified summary judgment memoranda reflect that defendant McKune reviewed plaintiffs' grievance appeals at the facility level. Those memoranda state essentially that in all instances he found the censorship decisions to be appropriate and correct. This provides evidence that defendant McKune had more than the mere right to control KDOC employees who were making the censorship decisions: he had the authority and opportunity to enforce and/or overturn those decisions. A rational trier of fact could conclude based on this evidence that defendant McKune actively participated and/or acquiesced in his subordinates' decisions which deprived plaintiffs of their constitutional rights by finding those subordinates' censorship decisions to be correct and appropriate. Because a genuine issue of material fact

exists concerning the extent of his personal involvement in the matter, this aspect of defendants' motion for summary judgment is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiffs' damage claims against defendants in their official capacities are dismissed for lack of jurisdiction. Defendants' motion for summary judgment (doc. #38) is granted as to plaintiffs' procedural due process claim; the motion is otherwise denied without prejudice to be renewed after discovery has been completed and the final pretrial order has been entered in this case.

**IT IS FURTHER ORDERED** that plaintiffs' motion for summary judgment (doc. #46) is denied without prejudice to be renewed after discovery has been completed and the final pretrial order has been entered in this case.

**IT IS SO ORDERED** this 15th day of June, 2007.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge