# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**MICHAEL LEE STROPE and**
**ALAN W. KINGSLEY,**

      **Plaintiffs,**

      v.                                              **Case No. 06-3150-JWL**

**JIM COLLINS, et al.,**

      **Defendants.**

_____

## MEMORANDUM AND ORDER

Plaintiffs Michael Lee Strope and Alan W. Kingsley, inmates who are proceeding pro se, bring this lawsuit against defendants Jim Collins, who is the mail review officer at Lansing Correctional Facility; David R. McKune, the warden; and William Cummings, a designee of the Kansas Secretary of Corrections. They bring this action pursuant to 42 U.S.C. § 1983 claiming that a prison regulation that bans possession of materials containing nudity, as applied by defendants to censor incoming mail, violates their First Amendment right to receive information while in prison. This matter is before the court on the parties' cross-motions for summary judgment (docs. 96 & 99). For the reasons explained below, the court finds that plaintiffs have not raised an issue of fact that the regulation is being applied in a manner that is not reasonably related to legitimate penological interests. As such, summary judgment in favor of defendants is warranted.

## STATEMENT OF MATERIAL FACTS

This case involves the censorship of inmate mail at Lansing Correctional Facility (LCF) for sexually explicit material. The defendants are employees of the Kansas Department of Corrections (KDOC) who were at all relevant times working at or on behalf of LCF. Plaintiffs Strope and Kingsley are detained in the custody of KDOC. The nature of this case is more fully explained in two prior orders of this court. *See generally Strope v. Collins*, 492 F. Supp. 2d 1289 (D. Kan. 2007) (granting in part and denying in part the parties' first cross-motions for summary judgment); *Strope v. Collins*, Case No. 06-3150-JWL, 2006 WL 3390393, at *1-*11 (D. Kan. Nov. 22, 2006) (granting in part and denying in part defendants' motion to dismiss). The only claim remaining in the case is plaintiffs' claim that the defendants' censorship of certain incoming mail violates their First Amendment right to receive information while in prison. *See* Pretrial Order (doc. 103), § 6(a), at 4.

Nearly one year ago, the court denied the parties' cross-motions for summary judgment on this claim. *See Strope*, 492 F. Supp. 2d at 1295-97. The summary judgment record established that the censorship at issue "involves the censorship of entire publications because they contain what appears to be a few photographs of women's partially bare buttocks." *Id.* at 1296. The court explained that a determination of whether the censorship was valid would require an examination of whether the prison regulation is reasonably related to legitimate penological interests under the four-factor analysis set forth in *Turner v. Safley*, 482 U.S. 78, 89-90 (1987). *Strope*, 492 F. Supp. 2d at 1295. At that time, the

parties had not commenced discovery and the court held that based on the "sparse factual record and in the absence of any meaningful argument from the parties under the four *Turner* factors, a genuine issue of material fact exists precluding summary judgment in favor of either party about whether the regulation is reasonably related to legitimate penological interests." *Id.* at 1296. The court therefore denied the parties' motions "without prejudice to be renewed after discovery is complete and the final pretrial order has been entered in this case." *Id.* at 1297 (remarking that "[h]opefully at that time the parties will be capable of presenting their arguments on this issue in a much more developed and meaningful fashion"). After an opportunity to conduct discovery, the parties have now renewed their cross-motions for summary judgment on the issue of whether the defendants' censorship of certain 2005 and 2006 issues of *Stuff* and *King* magazines passes constitutional muster.

Defendants contend that they censored plaintiffs' publications pursuant to a prison regulation enacted in 2002. This regulation states as follows:

**Sexually explicit materials.**
    (a) No inmate shall have in possession or under control any sexually explicit materials, including drawings, paintings, writing, pictures, items, and devices.
    (b) The material shall be considered sexually explicit if the purpose of the material is sexual arousal or gratification and the material meets either of the following conditions:
        (1) Contains nudity, which shall be defined as the depiction or display of any state of undress in which the human genitals, pubic region, buttock, or female breast at a point below the top of the aerola is less than completely and opaquely covered . . . .

K.A.R. 44-12-313. According to defendants, the censored publications contain "nudity," as defined by the regulation, because they contain images that involve "the depiction or display

3

of any state of undress in which the human . . . buttock . . . is less than completely and opaquely covered." *Id.* 44-12-313(b)(1).

As justification for this ban, defendants have submitted an affidavit from Roger Werholtz, who promulgated this regulation and currently serves as the Secretary of KDOC. Mr. Werholtz explains that in his experience as a senior corrections administrator, he has found that depictions of nudity in any form generally tend to disrupt the overall security of a correctional facility. He explains that all KDOC facilities employ persons of both genders, and these depictions can be used to sexually harass staff members. Such depictions also tend to lead to open masturbation and other activities that disrupt overall security and order. Mr. Werholtz offers the following justification for the specific prohibition on materials containing depictions of bare buttocks:

> 6. The specific prohibition on the depiction of either male or female buttocks is necessary to prevent threats to security. One concern, among others, is magazines which cater to male homosexual readers. These magazines often carry photographs of exposed male buttocks. When these magazines are received by individual inmates, they can be immediately identified as homosexuals by other inmates in the facility's population. Open homosexuals have been known to be targeted for exploitation and/or attack by other inmates. The regulation does not contain a specific prohibition on depictions of only male buttocks in order to keep the regulation gender-neutral.
> 7. Another concern addressed by the above-quoted language is the potential for such depictions to promote paraphilias and sexual deviance associated with an abnormal and distorted focus on certain parts of human anatomy. Best practices in current corrections management of sex offenders includes addressing, managing, and treating paraphilias manifested by sex offenders. The prohibition in question directly serves that purpose.
> 8. If the Department were to remove the prohibition on nudity, and particularly the prohibition on bare buttocks, correctional staff would be given a significantly greater burden in attempting to enforce the intent of the

regulation, and to successfully manage sex offenders in the prison population who receive such literature by illicit dealing and trading with other non-sex offender inmates.

9. Inmates retain the ability to view periodicals in general through subscription orders, as long as the incoming publication does not contain prohibited content. Additionally, inmates have access to publications provided in the general library maintained for inmate use at each facility.

Defendants also have submitted an affidavit from defendant Collins, who censors the incoming publications at LCF. Mr. Collins states that if an incoming publication contains prohibited content, he censors the entire publication. He explains why offending publications are not censored by merely removing only the prohibited images, as plaintiffs suggest they should be, rather than censoring those publications in their entirety. According to Mr. Collins, in order to remove individual prohibited depictions from each publication would require him to examine each page of every incoming publication for prohibited content, and he would need an exponential increase in staff in order to do this for all publications received by each of the nearly ten thousand inmates in KDOC control.

## SUMMARY JUDGMENT STANDARD[1]

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of

---

[1] Plaintiffs and defendants have both filed motions for summary judgment. The court will address the motions together. The legal standard does not change if the parties file cross-motions for summary judgment. Each party has the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law. *Atlantic Richfield Co. v. Farm Cr. Bank*, 226 F.3d 1138, 1148 (10th Cir. 2000).

law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008) (citing *Scott v. Harris*, 17 S. Ct. 1769, 1774 (2007)). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Libertarian Party v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## ANALYSIS

Inmates have a First Amendment right to receive information while in prison to the extent the right is not inconsistent with prisoner status or the legitimate penological objectives of the prison. *Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir. 2004). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *accord Jacklovich*, 392 F.3d at 426. In determining whether the regulation is reasonably related to legitimate penological interests, the court must engage in a four-factor analysis of "(1) whether a valid and rational connection exists between the regulation and the asserted legitimate governmental interest, (2) whether alternative means of exercising the constitutional right remain available to inmates, (3) any effect accommodating the right would have on guards and inmates, and (4) the absence of ready alternatives." *Jacklovich*, 392 F.3d at 426 (citing *Turner*, 482 U.S. at 89-90). The burden is on the plaintiff to disprove the validity of the prison regulation. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *Steffey v. Orman*, 461 F.3d 1218, 1222 (10th Cir. 2006).

The first *Turner* factor is that "there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner*, 482 U.S. at 89; *accord Jones v. Salt Lake County*, 503 F.3d 1147, 1153 (10th Cir. 2007). Here, the affidavit of Mr. Werholtz justifies the ban on materials containing depictions of bare buttocks on the grounds of prison security. He explains the ban in terms of the risks to homosexual inmates and the need to keep the regulation gender neutral, as well as in terms of managing paraphilias and sexual deviance associated with sex offender inmates. Certainly, prison security and safety are legitimate governmental objectives. *Salt Lake County*, 503 F.3d at 1156. Furthermore, a rational connection exists between the prison regulation's ban on bare buttocks and preventing the general type of disruptive behavior that those types of materials could encourage. *Cf. Farmer v. Brennan*, 511 U.S. 825 (1994) (reversing grant of summary judgment on issue of whether prison officials were deliberately indifferent to substantial risk of harm where transsexual who projected feminine characteristics was beaten and raped in the general inmate population); *Butler v. Dowd*, 979 F.2d 661 (8th Cir. 1992) (affirming jury verdict that prison officials violated prisoners' Eighth Amendment rights by permitting them to be homosexually raped by other inmates).[2]

---

[2] Plaintiffs argue that there is no rational connection between banning a few pictures with partially bare buttocks when the same materials can be seen daily on numerous television shows. Plaintiffs, however, have not submitted any admissible evidence to support this conclusory argument. They rely on an interrogatory response from David McKune in which he lists the channels received by inmates on the prison's cable system. This mere list of channels does not establish the extent to which these channels' programs permit similar visual depictions or that inmates are actually permitted to view those programs. In short, plaintiffs have not established that inmates have open access to any similar visual depictions

The second *Turner* factor requires the court to ask "whether there are alternative means of exercising the right that remain open to prison inmates." *Turner*, 482 U.S. at 90; *accord Salt Lake County*, 503 F.3d at 1153. This *Turner* factor is "clearly satisfied" where the regulation at issue permits a broad range of publications to be sent, received, and read. *Thornburgh v. Abbott*, 490 U.S. 401, 418 (1989). In this case, the regulation at issue only prohibits certain specifically defined sexually explicit materials. As Mr. Werholtz points out in his affidavit, inmates can still view periodicals in general through subscription orders as long as the incoming publication does not contain prohibited content. Additionally, inmates have access to publications that are provided in the general library maintained for inmate use at each facility. As there is no disputed issue that plaintiffs still have access to a broad range of publications, then, this *Turner* factor is satisfied. *See Salt Lake County*, 503 F.3d at 1156 (jail's ban on inmate access to "sexually explicit material" passed constitutional muster where the jail's regulations allowed a broad range of publications to enter the facility).

Next, the court must examine the impact that accommodating the asserted constitutional right would have on guards, other inmates, and prison resources. *Turner*, 482 U.S. at 90; *Salt Lake County*, 503 F.3d at 1153. According to Mr. Werholtz, if KDOC were to remove this prohibition, correctional staff would be significantly burdened in attempting to enforce the intent of the regulation, and in successfully managing sex offenders in the prison population who receive such literature by illicit dealing and trading with other non-

---

on television.

sex offender inmates. This establishes that to allow inmates to receive and possess images depicting bare buttocks would negatively impact the safety and security of prison personnel and other inmates. Thus, this *Turner* factor is also satisfied.

Lastly, the court determines "whether obvious, easy alternatives exist that fully accommodate inmates' rights at *de minimis* cost to valid penological interests. If so, the regulation may not be reasonable but an 'exaggerated response' to prison concerns." *Salt Lake County*, 503 F.3d at 1154 (quoting *Turner*, 482 U.S. at 90). Plaintiffs suggest that they should be allowed to censor their own publications and, if necessary, remove the offending pages that contain prohibited content. This is by no means an "obvious," easy alternative. Aside from trustworthiness issues undoubtedly associated with at least some inmates, permitting inmates to screen their own publications would defeat the legitimate penological interests, discussed above, in preventing sex offenders from viewing sexually explicit material. Then, of course, there also would be logistical concerns associated with carrying out that type of screening procedure. Simply put, despite plaintiffs' mere suggestion that this sounds like a good idea, they have not submitted a factual record from which a rational trier of fact could find that this type of procedure could be implemented at *de minimis* cost to the valid penological interests in prison security, as discussed above. "This is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner*, 482 U.S. at 90-91. Thus, plaintiffs have not raised a disputed issue of fact that an

obvious, easy alternative exists that would fully accommodate their rights at a *de minimis* cost to the defendants' legitimate interests in institutional security.

Plaintiffs also focus on the court's prior ruling on the parties' initial cross-motions for summary judgment. *See generally Strope v. Collins*, 492 F. Supp. 2d 1289 (D. Kan. 2007). There, the court observed that "prior case law has not addressed the validity of the specific type and degree of censorship at issue in this case." *Id.* at 1296. Specifically, *Mauro v. Arpaio*, 188 F.3d 1054 (9th Cir. 1999), involved a jail ban on sexually explicit materials that "show frontal nudity." The cases of *Ramirez v. Pugh*, 379 F.3d 122 (3d Cir. 2004), and *Amatel v. Reno*, 156 F.3d 192 (D.C. Cir. 1998), involved a prison ban on pictorial depictions "where genitalia or female breasts are exposed." The prison regulation at issue in those cases were "targeted to the receipt of inmates of softcore and hardcore pornography." *Ramirez*, 379 F.3d at 125. In contrast, the prison regulation at issue here prohibits depictions of bare buttocks, which bans a broader range of materials. To be sure, the only images that are part of the summary judgment record in this case reveal that the publications were censored because they included images of women wearing various types of underwear (thong-style, high cut, etc.) in such a way as to reveal their partially bare buttocks. These images would more accurately be characterized as sexy, revealing images rather than pure pornography, in the more traditional sense of that word. Nonetheless, the regulation states that material is considered sexually explicit if its purpose is sexual arousal or gratification, and the only plausible purpose for the censored images is sexual pleasure. The court denied defendants' original motion for summary judgment only because prior case law was

11

sufficiently distinguishable that it did not establish that the type of ban at issue in this case was valid as a matter of law and, additionally, the parties had not at that time presented the court with an adequately developed factual record from which the court could meaningfully evaluate the applicable *Turner* factors. Now, in the parties' current cross-motions for summary judgment, they have presented the required factual record and the Tenth Circuit has held that summary judgment is appropriate under a *Turner* analysis if the plaintiff has not met his or her summary judgment burden. *See Jones v. Salt Lake County*, 503 F.3d at 1154-56 (affirming district court's grant of summary judgment that jail ban on sexually explicit material passes constitutional muster under *Turner* analysis). For those reasons, then, the court's denial of the parties' initial round of cross-motions for summary judgment is distinguishable from the current procedural posture of this case.

In sum, defendants have met their initial summary judgment burden of pointing to a lack of evidence to support plaintiffs' as-applied challenge under the four-factor *Turner* analysis. The summary judgment burden, then, shifted to plaintiffs to set forth specific facts in the record which demonstrate disputed issues from which a rational trier of fact could find that the defendants have applied the challenged prison regulation in a manner that is not reasonably related to legitimate penological interests. Plaintiffs have not met this burden and, as such, they cannot withstand summary judgment.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Second Motion for Summary Judgment (doc. 99) is granted and Plaintiffs' Motion for Summary Judgment (doc. 96) is denied.  This case is dismissed.

**IT IS SO ORDERED** this 12th day of June, 2008.

                                                s/ John W. Lungstrum
                                                John W. Lungstrum
                                                United States District Judge